IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03515-CBS

LINDA FAYE J. DONNA,
     Plaintiff,
v.

COUNTRYWIDE MORTGAGE a.k.a. BOFA,
BOFA, N.A., a Nationally Chartered Bank, and
NATIONSTAR MORTGAGE, a Nationally Servicing Company,
     Defendants.

_____

MEMORANDUM OPINION AND ORDER
_____

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on: (1) "Defendant Nationstar Mortgage LLC'S Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)," and (2) Defendant Bank of America, N.A.'s Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).[1] The case was directly assigned to this Magistrate Judge pursuant to 28 U.S.C. § 636(c) and D.C. COLO. LCivR 72.2. (See Order of Reference upon Consent to Jurisdiction of Magistrate Judge (Doc. # 51)). The court has reviewed the Motions, Ms. Donna's Responses (filed June 29, 2015 and July 9, 2015) (Docs. # 41, # 43), Defendants' Replies (filed July 16, 2015 and July 22, 2015) (Docs. # 45, # 46), the pleadings, the entire case file, and the applicable law, and is sufficiently advised in the premises.

I.     Statement of the Case

Ms. Donna commenced this case *in forma pauperis* and in her *pro se* capacity on December 31, 2014. (*See* Doc. # 1 (Complaint), Application to Proceed in District Court without

_____

[1] Nationstar Mortgage LLC is erroneously named as Nationstar Mortgage. To the extent that Ms. Donna named "Countrywide Mortgage, a.k.a. BOFA" and "BOFA, N.A.," Defendant Bank of America, N.A. ("BANA") has interpreted that it is the intended Defendant and Ms. Donna has not disagreed.

Paying Fees or Costs (Doc. # 3), "Order Granting Plaintiff Leave to Proceed Pursuant to 28 U.S.C. § 1915" (Doc. # 4)).  At the court's direction, Ms. Donna filed amended pleadings on February 2, 2015 and April 30, 2015.  (*See* Orders (Docs. # 5, # 8), amended pleadings (Docs. # 6, # 14)).  Counsel entered his appearance for Ms. Donna on March 30, 2015.  (*See* Doc. # 11).  With the court's permission, Ms. Donna filed her Second Amended Complaint ("SAC") on April 30, 2015 and May 5, 2015.  (*See* Docs. # 14, # 16).[2]  Ms. Donna alleges nine claims for: (1) "Breach of Contract Misapplication of Payments or Inaccurate Accounting" [sic] against both Defendants; (2) "Failure of Lender [BANA] to Honor Modification of Previous Lender and Servicer;" (3) Failure of Servicer Nationstar to Honor Modification of Previous Lender and Servicer;" (4) "Violation of the Colorado Consumer Protection Act" ("CCPA") against Defendant Nationstar; (5) "Charging Unreasonable Fees" against Nationstar; (6) "Violation of the Fair Credit Reporting Act" ("FCRA") against both Defendants; (7) "Negligence" against Nationstar; (8) "Colorado Elder Law Violation" against unspecified Defendants; and (9) "Wrongful Foreclosure" against both Defendants.  (*See* SAC (Doc. # 16)).

II.     Standard of Review

        Defendants move to dismiss the SAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Defendant BANA's assertion that Ms. Donna lacks standing to bring her claim under the FCRA constitutes a challenge to the allegations of subject matter jurisdiction in the SAC.  *See Hill v. Vanderbilt Capital Advisors, LLC,* 702 F.3d 1220, 1222 (10th Cir. 2012) ("standing can be colorably characterized as an issue of subject matter jurisdiction").  As the party asserting jurisdiction, Ms. Donna bears the burden of establishing

---

[2]  The SAC was filed as both Doc. # 14 and Doc. # 16.  Exhibits 1-8 to the SAC were filed with Doc. # 14 and Exhibit 9 to the SAC was filed with Doc. # 16.  (*See* text entry on CM/ECF at Doc. # 16).

that this court has jurisdiction to hear her claims.  *See Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir.

1994) ("Mere conclusory allegations of jurisdiction are not enough; the party pleading jurisdiction

must allege in his pleading the facts essential to show jurisdiction.") (internal quotation marks

and citations omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted."

> In reviewing a motion to dismiss, this court must look for plausibility in the
> complaint.   Under this standard, a complaint must include enough facts to state a
> claim to relief that is plausible on its face.  The allegations must be enough that, if
> assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for
> relief.

*Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (internal

quotation marks and citations omitted).  The burden is on the plaintiff to frame "a complaint with

enough factual matter (taken as true) to suggest" that she is entitled to relief.  *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007).


III.    Analysis

A.      First, Second, and Third Claims for Relief

In her First Claim for Relief, Ms. Donna alleges that both Defendants "improperly applied

funds (in violation of the terms in the mortgage contract)," "failed to credit funds to the account,"

and refused payments "in violation of the terms of the mortgage contract."  (*See* Doc. # 16 at 8-

9 of 23).  In her Second and Third Claims for Relief, she alleges that Defendants "refused to

honor" and "failed to acknowledge" a loan modification allegedly made by a previous lender.

(*See id.* at 10-11 of 23).  Nationstar has interpreted Ms. Donna's claims for failure to honor a

loan modification as breach of contract claims and Ms. Donna does not disagree.  To prevail on

her claims for breach of contract against Defendants, Ms. Donna must allege facts that would

establish four elements: (i) the existence of a binding agreement; (ii) the plaintiff's performance of its obligations (or some justification for its non-performance); (iii) the defendant's failure to perform its obligations; and (iv) resulting damages. *Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238, 1243 (D. Colo. 2013) (citation omitted). *See also Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1255 (D. Colo. 2014) (same).

The SAC does not specifically identify what "mortgage contract" or what specific terms have been breached.  Ms. Donna's conclusory allegations are insufficient to state a claim plausible on its face as to Nationstar.  *See Twombley*, 550 U.S. at 570 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."); *Tatten v. Bank of America Corp.*, 912 F. Supp. 2d 1032, 1040 (D. Colo. 2012) (plaintiff failed to provide factual allegations to support any one of the four elements necessary to state a breach of contract claim).  Nor does Ms. Donna allege the second element: that she has performed her obligations or justification for her non-performance.  She acknowledges that she was thirty five days behind on her loan and that her payments were insufficient to bring the loan current.  (*See* Exhibit 3 to SAC (Doc. # 14-5 at 2 of 2)).[3]  For these reasons, Ms. Donna's breach of contract claims are properly dismissed.  *See Knowles v. Bank of America*, N.A., No. 12-cv-00621-RBJ, 2012 WL 5882570, at *3 (D. Colo. Nov. 21, 2012) (dismissing borrowers' breach of contract claim for failure to allege they paid their principal and interest payments).

Ms. Donna's claims based on a purported loan modification implicate Colorado's Credit Agreement Statute of Frauds ("CCASF"), Colo. Rev. Stat. § 38–10–124.  *See Schoen v. Morris*, 15 P.3d 1094, 1098, 1100 (Colo.2000) (holding that the credit agreement statute of frauds

---

[3]  In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted). "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (internal quotation marks and citation omitted).

applies to promises between a lender and a third-party lender).  The CCASF bars any claim by

a debtor against a creditor relating to a credit agreement for a principal amount exceeding

$25,000 unless the credit agreement at issue is in writing and signed by the creditor.

*PayoutOne v. Coral Mortgage Bankers*, 602 F. Supp. 2d 1219, 1225 (D. Colo. 2009) (citing

Colo. Rev. Stat. § 38-10-124(2)).  The CCASF applies not only to an oral credit agreement, but

also to any claim relying on or relating to such an agreement.  *See Univex Int'l, Inc. v. Orix*

*Credit Alliance, Inc.*, 914 P.2d 1355, 1358 (Colo. 1996).

Ms. Donna alleges that Countrywide Home Loans sold her mortgage to First Franklin

Mortgage.  (*See* Doc. # 16 at 4 of 23, ¶ 15).  She alleges that First Franklin Mortgage "provided

a three to five year modification on Plaintiff's loan at a rate of 3%."  (*See id.*).  *But see* Exhibit 6

to SAC (Doc. # 14-8) (showing that the interest rate will remain fixed at 3% for only three years,

that after the three-year period the interest rate will revert back to the interest rate set forth in the

note, and not showing that the fixed rate period could be extended two additional years).  The

basis for Ms. Donna's claims is that "[i]n February, 2011, the 3% modification loan period was

extended verbally" by a telephone conversation "to the full five year period which was to end

July, 2013."  (*See* Doc. # 41 at 5 of 16).  She alleges that the verbal modification altered the

express terms of the prior written loan modification agreement.  The alleged oral modification

agreement constitutes a "credit agreement" under the CCASF.  *See* Colo. Rev. Stat. § 38-10-

124(1).  Ms. Donna's claims indisputably relate to an alleged extension of the three-year fixed

rate that was not reduced to writing, not signed by Nationstar or its predecessors, and is

contrary to the express terms of the prior written loan modification agreement.  The CCASF bars

her claims that the loan was verbally modified to extend the three-year fixed term.

B.      Fourth and Eighth Claims for Relief

Ms. Donna alleges that Nationstar violated the CCPA, Colo. Rev. Stat. § 6-1-105(i), (n),and (u).  (See Doc. 3 16 at 12 of 23, ¶ 68).  The CCPA "was enacted to regulate commercial activities and practices which, because of their nature, may prove injurious, offensive, or dangerous to the public."  *Dalton v. Countrywide Home Loans, Inc.*, 828 F. Supp. 2d 1242, 1250 (Dec. 1, 2011) (internal quotation marks and citation omitted).  The CCPA outlaws deceptive trade practices in connection with the offering or sale of goods or services.  Colo. Rev. Stat. § 6–1–105.  A claim under the CCPA consists of the following elements: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury."  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003).  If all elements of a CCPA claim are not met, the claim fails as a matter of law.  *Sierra v. Stonebridge Life Ins. Co.*, No. 10-cv-03123-PAB-KMT, 2013 WL 5323083, at * 5 (D. Colo. Sept. 23, 2013) (citation omitted).  *See also HealthONE of Denver, Inc. v. UnitedHealth Group, Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011) (All elements of a CCPA claim must be met; otherwise the claim fails as a matter of law.").

A deceptive trade practice requires a showing that the defendant knowingly made a misrepresentation or a false representation that had the capacity to deceive and that either "induce[d] a party to act, refrain from acting, or ha[d] the capacity or tendency to attract consumers."  *HealthONE*, 805 F.Supp.2d at 1120.  To state the element that Defendants engaged in an unfair or deceptive trade practice, Ms. Donna must fulfill the heightened Rule 9(b) pleading standard.  *Id.* at 1120–21.  *See also Cavitat Medical Technologies, Inc. v. Aetna, Inc.*,

Case No. 04-CV-01849-MSK-OES, 2006 WL 218018, at *3 (D. Colo. Jan. 27, 2006) (holding

that claims under § 6–1–105 of the CCPA must be pled with particularity pursuant to Fed. R.

Civ. P. 9(b));  *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985) (holding

that "Rule 9(b)'s requirement of particularity applies to a plaintiffs' allegations of deceptive trade

practices under the Colorado Consumer Protection Act.").  "Rule 9(b) requires a complaint to set

forth the time, place and contents of the false representation, the identity of the party making the

false statements and the consequences thereof."  *HealthONE*, 805 F. Supp. 2d at 1120–21

(internal quotation marks and citation omitted).  "At a minimum, Rule 9(b) requires that a plaintiff

set forth the who, what, when, where and how of the alleged fraud."  *Tatten*, 912 F. Supp. 2d at

1040 (internal quotation marks and citation omitted).

Ms. Donna fails to meet the pleading standard for a deceptive trade practice.  She

alleges "a longstanding history of litigation regarding the mistreatment of homeowners," that she

"has been treated in a deplorable manner," that "[t]he general public has been subjected to [a]

host of troubling behavior," that she "experienced lost paperwork and the modification

applications [were] applied to the wrong property," that "[t]he consumer should not be subjected

to such wasteful behavior," that "[n]o person should have to pay for a service that fails to provide

what they advertise," and that she "is appalled by the lack of knowledge of the employees and

process utilized to complete the modifications packet which i[s] often denied."  (*See* Doc. # 16 at

13 of 23).  She fails to state any facts to indicate that a fraud was perpetrated.  She fails to

allege what, if any, acts by the Defendants constituted a deceptive trade practice.  The SAC

does not identify with particularity false statements, who made the false statements, or when the

statements were made.

Even if Ms. Donna had adequately alleged circumstances of fraud, she fails to sufficiently

plead the third element of a CCPA claim, Ms. Donna does not allege or argue that the alleged

7

deceptive trade practice had a significant public impact.  *See Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 155 (Colo. 2007) ("if a wrong is private in nature and does not affect the public, a claim is not actionable under the CCPA.");  *Cavitat*, 2006 WL 218018, at *3 ("If alleged deceptive trade practices occur only within the context of a private agreement and do not impact the public, then the CCPA provides no remedy.");  *Rhino Linings*, 62 P.3d at 150 (CCPA is not intended to provide additional remedies to claimants whose disputes have no public impact but are, instead, purely private transactions).  Considerations relevant to whether a challenged practice significantly impacts the public include: "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1241-42 (D. Colo. 2010) (internal quotation marks and citations omitted).  Ms. Donna makes no allegations regarding the number of consumers affected by Defendants' alleged deceptive trade practices, the relative bargaining power of these consumers, or how the challenged practice has the potential to impact a significant number of customers in the future.  Her CCPA claim involves only alleged misconduct with regard to her private loan.  She has not alleged or argued that misconduct with respect to one borrower affected or had the potential to affect a significant number of consumers to meet the significant public impact requirement.  *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1113 (10th Cir. 2009) (affirming summary judgement on CCPA claim as "the record includes no evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.") (internal quotation marks and citation omitted).  Ms. Donna's allegations of the "general public" and "numerous homeowners" are conclusory and insufficient to support a CCPA claim.  *See, e.g., Johnstown Feed & Seed, Inc. v. Continental*

*Western Insurance Company*, 641 F. Supp. 2d 1167, 1181 (D. Colo. 2009) ("the fact that a workers' compensation insurer and an insured have a dispute over a claim does not necessarily mean that other members of the public are or have been affected by the insurer's practices") (internal quotation marks and citation omitted).

Without identifying a specific Defendant, Ms. Donna also alleges a claim for "Colorado Elder Law Violation" under § 6-1-112 of the CCPA. (*See* Doc. # 16 at 18 of 23). This claim fails because the statute she relies on authorizes the attorney general and district attorneys to secure civil penalties but does not provide a private cause of action. *See Scott v. Annual Credit Report Serv.*, No. CIV.A. 10-CV00614BNB, 2010 WL 2038568, at *2 (D. Colo. May 21, 2010) (citing Colo. Rev. Stat. § 6–1–103 ("[t]he attorney general and the district attorneys of the several judicial districts in this state are concurrently responsible for the enforcement of this article.")). This claim also fails to satisfy the pleading requirements for a CCPA claim, that is, a deceptive trade practice or a significant public impact. As Ms. Donna fails to allege any facts to support a deceptive trade practice or the significant public impact element of her CCPA claims and lacks standing to assert a claim for civil penalties, her CCPA claims are properly dismissed for failure to state a claim to which relief can be granted.

C.     Sixth Claim for Relief

Ms. Donna alleges that both Defendants violated the FCRA, 15 U.S.C. § 1681s-2(a)(1)(A), by furnishing allegedly incorrect information about her credit to unspecified credit bureaus. (See Doc. # 16 at ¶¶ 90-100). The FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. §

1681(b).  The FCRA "places distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies." *Aklagi v. Nationscredit Financial*, 196 F. Supp. 1186, 1192 9D. Kan. 2002) (citation omitted).

First, Ms. Donna's claim fails as a matter of law because § 1681s-2(a) provides no private cause of action.  *See* 15 U.S.C. § 1681s-2(c);  *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012) ("right of action is limited to claims against the credit reporting agency; it does not extend to furnishers");  *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) ("Congress expressly limited furnishers' liability under § 1681s-2(a) by prohibiting private suits for violations of that portion of the statute.");  *Clark v. Green Tree Servicing LLC*, 69 F. Supp. 3d 1203, 1213 (D. Colo. 2014) (right of action under § 1681s–2(a) of FCRA is limited to claims against the credit reporting agency; it does not extend to furnishers); *Jarrett v. Bank of Am.*, 421 F. Supp. 2d 1350, 1353 n. 2 (D. Kan. 2006) ("Furnishers are also required to provide accurate information to credit reporting agencies, 15 U.S.C. § 1681s–2(a), but Congress did not create a private right of action for violation of this provision.") (citation omitted).  "Specifically, subsection (c) eliminates remedies to consumers for violations of subsection (a), and subsection (d) provides that the duties imposed under subsection (a) can be enforced only by government agencies and officials." *Aklagi*, 196 F. Supp. at 1192.  Therefore, because of subsections (c) and (d), Ms. Donna has no private cause of action for Defendants' alleged violations of subsection (a).  *Id.* (citing *Hasvold v. First USA Bank*, 194 F.Supp.2d 1228, 1235 (D.Wyo. 2002) (citing case law to support the conclusion that there is no private right of action for violations of subsection (a)).

Second, Title 15 U.S.C. § 1681s-2(b) generally pertains to the duties of furnishers of information to conduct an investigation upon notice of a dispute from a credit reporting agency.

10

Subsection (b) of § 1681s–2 creates a private cause of action by a consumer against a furnisher of credit information, but requires a furnisher of credit information to conduct an investigation "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute" regarding the accuracy of information provided to a consumer reporting agency." Title 15 U.S.C. § 1681s–2(b)(1). The duties listed in § 1681s-2(b) arise only after the furnisher receives notice of a dispute from a credit reporting agency; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b). *See Aklagi*, 196 F. Supp. at 1193 ("Therefore, under the plain language of the statute, the duty of a furnisher of credit information to investigate a credit dispute is triggered only after the furnisher receives notice of the dispute from a consumer reporting agency, not just the consumer"). "[C]ourts have uniformly reached this conclusion." *Id.* at 1193 (citing *Hasvold*, 194 F.Supp.2d at 1236 (reasoning that § 1681s–2(b) provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed); *Scott v. Amex/Centurion S & T*, Nos. 3:01–CV–1594–H et al., 2001 WL 1645362, at *4 (N.D.Tex. Dec. 18, 2001) ("The duties created by subsection (b) arise . . . only after the furnisher receives notice from a consumer reporting agency that a consumer is disputing credit information."); *Fino v. Key Bank*, No. Civ. A. 00–375E, 2001 WL 849700, at *5 (W.D.Pa. July 27, 2001) (reasoning that § 1681s–2(b) provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed); *Jaramillo v. Experian Info. Solutions*, Inc., 155 F.Supp.2d 356, 363 (E.D.Pa.2001) ("[T]o state a cause of action under 1681s–2(b) requires a pleading that a consumer reporting agency notified a furnisher of a dispute. . . ."); *Yelder v. Credit Bureau of Montgomery, L.L.C.*, 131 F.Supp.2d 1275, 1289 (M.D.Ala.2001) ("[A] furnisher of information has no duty under § 1681s–2(b) until a consumer reporting agency, and not a consumer,

11

provides notice to the furnisher of information of a dispute."); *Dornhecker v. Ameritech Corp.*, 99 F.Supp.2d 918, 928–29 (N.D.Ill.2000) ("Section 1681s–2(b) triggers a furnisher's duty to investigate allegedly erroneous information when that furnisher has received notice from a consumer reporting agency that the credit information is disputed."). The Tenth Circuit has recognized liability for a furnisher of information under FCRA only where the furnisher first receives notice of a dispute from a credit reporting agency, not directly from a customer. *See Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750-51 (10th Cir. 2009) (upholding dismissal of FCRA claim against furnisher of information on grounds that plaintiffs failed to allege that credit reporting agency gave notice to furnisher that information reported on plaintiffs' credit was in dispute) (citation and internal quotations omitted). Here, Ms. Donna fails to allege that the Defendants ever received notice of a dispute from a credit reporting agency. She fails to allege the critical link between the consumer reporting agencies and the Defendants. This claim fails to state a claim to which relief can be granted against the Defendants.

D.    Seventh Claim for Relief

In her Seventh Claim for Relief Ms. Donna alleges that Nationstar was negligent in handling her purported loan modification. (*See* Doc. 3 16 at 16-17 of 23). "The elements of a negligence claim consist of the existence of a legal duty by the defendant to the plaintiff, breach of that duty by the defendant, injury to the plaintiff, and a sufficient causal relationship between the defendant's breach and the plaintiff's injuries." *Connes v. Molalla Transport System, Inc.*, 831 P.2d 1316, 1320 (Colo. 1992) (citations omitted). *See also Silva v. Wilcox*, 223 P.3d 127, 135 (Colo. App. 2009) ("To establish a common law negligence claim, the plaintiff must show that the defendant owed the plaintiff a legal duty to conform to a standard of care, the defendant

breached that duty, the plaintiff suffered injury, and there is a causal relationship between the breach and the injury.") (citation omitted).

In order for liability to attach on a theory of negligence, the parties must have a relationship recognized by law as providing the foundation for a duty to prevent an injury.  "The initial question in any negligence action, therefore, is whether the defendant owed a legal duty to protect the plaintiff against injury.  *Connes*, 831 P.2d at 1320  (citations omitted).  "A negligence claim will fail if it is predicated on circumstances for which the law imposes no duty of care upon the defendant."  *Id.*  The issue of legal duty is a question of law to be determined by the court."  *Id.*

Ms. Donna has not alleged any cognizable duty owed to her by Nationstar.  "In the absence of special circumstances" not present here, "the legal relationship between a lending institution and its customer is that of debtor and creditor."  *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1365 (Colo. App. 1994).  Ms. Donna alleges that Nationstar was negligent in handling her purported loan modification.  (See Doc. # 16 at 16-17 of 23).  Her allegations relate "only to activities taken in the course of a normal lender-borrower relationship" and does not create a duty of care.  *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 523 (Colo. App. 2006).  As she has not alleged any legal duty owed to her by Nationstar, her negligence claim must fail.  *See Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo. 2002) (citation omitted) ("If a negligence action is based on facts that do not impose a duty of care upon a defendant for a plaintiff's benefit, the claim will fail.").

Ms. Donna's negligence claim is also barred by the economic loss rule.  "The economic loss rule serves to maintain a distinction between a tort obligation and a contract obligation."  *Knowles*, 2012 WL 5882570, at *2 (internal quotation marks and citation omitted).  *See also Engeman Enterprises, LLC v. Tolin Mechanical Systems Co.*, 320 P.3d 364,368 (Colo. App.

13

2013) ("The economic loss rule maintain[s] the boundary between contract law and tort law.")

(internal quotation marks and citations omitted).  "Under the economic loss rule, a party

suffering only economic loss from the breach of an express or implied contractual duty may not

assert a tort claim for such a breach absent an independent duty of care under tort law."

*Knowles*, 2012 WL 5882570 at * 2 (internal quotation marks and citation omitted).  *See also*

*Jardel Enterprises, Inc. v. Triconsultants, Inc.*, 770 P.2d 1201, 1303 (Colo. App. 1988) ("no

cause of action lies in tort when purely economic damage is caused by negligent breach of a

contractual duty").  "The key to determining the availability of a contract or tort action lies in

determining the source of the duty that forms the basis of the action."  *Knowles*, 2012 WL

5882570 at * 2 (internal quotation marks and citation omitted).  The wrongful actions that Ms.

Donna alleges, that Nationstar did not comply with the terms of a purported loan modification,

arise from their contractual relationship.  The duties purportedly tortiously breached were

created by a contractual relationship and the facts supporting the tort claim are the same as

those supporting the contract claims.  Ms. Donna does not allege an independent duty of care

imposed by tort law that Nationstar breached.  For these reasons, the negligence claim is

properly dismissed for failure to state a claim to which relief can be granted.


E.     Ninth Claim for Relief

       Ms. Donna alleges "Wrongful Foreclosure" against both Defendants.  (*See* Doc. # 16 at

18-19 of 23).  First, her wrongful foreclosure claim fails because "Colorado does not recognize a

claim for damages based on wrongful foreclosure."  *See Schwartz v. Bank of Am., N.A.*, No. 10-

CV-01225-WYD-MJW, 2011 WL 1135001, at *4 (D. Colo. Mar. 28, 2011) (noting that Colorado

does not recognize a claim for damages based on "wrongful foreclosure"); *Commercial Equity

Corp. v. Majestic Sav. & Loan Ass'n*, 620 P.2d 56, 58 (Colo. App. 1980) (court did not recognize

wrongful foreclosure as a viable claim).  Second, the wrongful actions Ms. Donna alleges in this claim -- application of an "outrageous interest rate" and "failure to recognize" the alleged modification -- arise from the contract documents between her and Nationstar.  She fails to allege that Nationstar breached a separate duty imposed by tort law. Thus, even if "wrongful foreclosure" were a cognizable claim, her claim is barred by the economic loss rule.  *See Knowles v. Bank of America*, 12-cv-00621-RBJ,  2012 WL 5882570, at *2 (D. Colo. Nov. 21, 2012) (holding plaintiff's "wrongful foreclosure" claim was barred by the economic loss rule because the wrongful actions plaintiff alleged arose from the contract between the parties).  Third, the alleged "failure to recognize" a verbal loan modification of a written agreement is barred by the CCASF, Colo. Rev. Stat. § 38–10–124.  For these reasons, Ms. Donna's claim for wrongful foreclosure is properly dismissed for failure to state a claim to which relief can be granted.

F.    Fifth Claim for Relief

        In her Fifth Claim for Relief, Ms. Donna alleges that Nationstar "has attempted to charge unreasonable fees" that "unfairly increased the total balance" owed by the borrower.  (*See* Doc.# 16 at 14 of 23, ¶ 82).  Ms. Donna acknowledges that "fees can be assessed for: late payments, inspection fees, foreclosure costs, and other default-related fees."  (*Id.* at ¶ 81).  She acknowledges that her loan was in default and in foreclosure prior to her bankruptcy filing.  (*See* Doc.# 16 at ¶¶ 23-27).  Ms. Donna does not specify what fees she challenges and "charging unreasonable fees" is not a cognizable cause of action.  To the extent her claim can be interpreted as a breach of contract claim, it fails for the same reasons her breach of contract claim fails. To the extent her claim can be interpreted as a tort claim, it is barred by the economic loss rule.  *See Knowles*, 2012 WL 5882570, at *2 (noting the economic loss rule bars

tort claims arising from a contract between the parties). Ms. Donna alleges no more than Nationstar's "attempt" to charge unreasonable fees and does not allege that she paid any of the challenged fees. (*See id.* at ¶¶ 82, 84).


Accordingly, IT IS ORDERED that:

1.     "Defendant Nationstar Mortgage LLC'S Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (filed June 1, 2015) (Doc. # 31) and Defendant Bank of America, N.A.'s Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) (filed June 15, 2015) (Doc. # 36) are GRANTED and this civil action is dismissed for lack of subject matter jurisdiction over Plaintiff's Sixth Claim for Relief and for failure to state a claim to which relief can be granted.

2.     Without any objection by Plaintiff, the court GRANTS Defendant Nationstar's Request for Judicial Notice in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (filed on June 1, 2015) (Doc. # 32).


DATED at Denver, Colorado this 28th day of December, 2015.

BY THE COURT:


_____s/Craig B. Shaffer_____
United States Magistrate Judge